**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00131-CHL**

**TAYLOR B.,[1]**                                                                                        **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[2]**                                        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Taylor B. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 12, 12-1, 14.) Claimant also filed a reply. (DN 15.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On March 28, 2023, Claimant applied for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 18, 63-64, 73-74, 83-84, 93-94, 261-77.) Her applications alleged disability beginning on March 1, 2021, due to her seizure disorder. (*Id.* at 64, 74, 84, 94, 329.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 108-12, 118-22, 130-33, 142-45.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] As Frank Bisignano is now the Commissioner of Social Security, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

At Claimant's request, Administrative Law Judge ("ALJ") Patrick R. Digby ("the ALJ") conducted a hearing on Claimant's applications on March 5, 2024. (*Id.* at 40-62, 146-47.) Claimant attended the hearing by telephone with her non-attorney representative. (*Id.* at 42-43, 104.) An impartial vocational expert also participated in the hearing. (*Id.* at 42.)

During the hearing, Claimant testified to the following. She is a high school graduate who lives with her parents. (*Id.* at 44.) She has four small children—ages eight, seven, six, and eighteen months—for whom she is the primary caretaker though her parents help her. (*Id.* at 45-46.) Her youngest child was born after she became disabled. (*Id.* at 45.) At the house, she does the laundry, helps with the dishes, and "straighten[s] up a little bit." (*Id.* at 52.) She previously worked as a housekeeper. (*Id.* at 47.) She smokes marijuana occasionally but stopped drinking alcohol and smoking cigarettes. (*Id.* at 53-54.) She said she is unable to work because of her epilepsy both because her neurologist "doesn't want [her] to be alone" and because she is unable to drive. (*Id.* at 47, 46-48.) She has "about one or two seizures per month" and each seizure lasts about one and a half minutes. (*Id.* at 46, 51.) She said after each seizure she is drowsy, exhausted, "confused until the next day," and "off balance." (*Id.* at 51-52.) She believes the seizures are having a detrimental effect on her memory, which she repeatedly testified is "terrible." (*Id.* at 52, 55-56.) She estimated she began having seizures in about 2013 but was not diagnosed with epilepsy until March 2023. (*Id.* at 47.) She takes several medications for her seizures but the medicine does not fully prevent them and she is still having "break-through seizures." (*Id.* at 48.) She also has anxiety for which she takes medication, though she believes her anxiety is getting worse. (*Id.* at 53.)

The ALJ issued an unfavorable decision on April 26, 2024. (*Id.* at 15-39.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether

an individual is disabled, the ALJ made the following findings.  First, the Claimant had not engaged in substantial gainful activity since March 1, 2021, her alleged onset date.  (*Id.* at 21.) Second, Claimant had the following severe impairments: epilepsy and anxiety.  (*Id.*)  Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (*Id.*)  Fourth, Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations:

> She cannot work on ladders, ropes, or scaffolds; at unprotected heights; around dangerous machinery; on uneven terrain; above or around open bodies of water; or around sharp objects or open flames. She cannot perform any commercial driving. The claimant is limited to unskilled work where she can understand, remember, and carry out simple instructions and tasks but no detailed tasks . . . . She can concentrate and remain on task for two-hour periods across an eight-hour workday and five-day workweek on these simple tasks without interruptions from psychological[ly] based symptoms. The claimant is able to relate to and work with supervisors, co-workers, and the general public on an occasional basis; but she should have no direct contact with the general public such [as] in jobs as a sales, cashier, or information clerk. She should be paid by the hour and not for piece work. There should be no frequent changes in the work environment.

(*Id.* at 24.)  Additionally at step four, the ALJ found that Claimant was unable to perform any of her past relevant work as a fast food cashier or cleaner/housekeeper.  (*Id.* at 31.)  Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform.  (*Id.*)  The ALJ concluded that Claimant was not under a disability from March 1, 2021, through April 26, 2024, the date of his decision.  (*Id.* at 32.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on January 29, 2025.  (*Id.* at 1-7, 257-60.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. §

422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on March 4, 2025.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2025).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.    Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant argued that the ALJ erred in two ways. First, the Claimant argued that the ALJ erred in his analysis of the opinion evidence of record, specifically his consideration of the opinions of the state agency's psychological consultants, Alicia Fedewa, Ph.D. ("Dr. Fedewa") and Jane F. Brake, Ph.D. ("Dr. Brake"), and consultative examiner Brittainy Q. Dial, M.S. ("CE Dial"). (DN 12, at PageID # 1389,1395-97; DN 12-1; DN 15, at PageID # 1424-27.) Second, she argued that the ALJ erred in his assessment of Claimant's own subjective allegations regarding her symptoms, including in his consideration of the third party function report submitted by Claimant's mother. (DN 12, at PageID # 1397-1400; DN 12-1; DN 15, at PageID # 1427-28.) The Court will consider each of these arguments below.

### 1.    Opinion Evidence

Claimant argued that the ALJ erred in his assessment of the opinions of Dr. Fedewa, Dr. Brake, and CE Dial. (DN 12, at PageID # 1389,1395-97; DN 12-1; DN 15, at PageID # 1424-27.) Claimant did not argue that the ALJ failed to comply with the articulation requirements of 20 C.F.R. §§ 404.1520c, 416.920c. (DNs 12, 15.) Instead, she made particular challenges to the ALJ's analysis of the opinions, arguing that the same was not supported by substantial evidence. The Court will consider these challenges separately below.

### a)    State Agency Psychological Consultants

Claimant argued that the ALJ's analysis of the opinions of state agency psychological consultants, Drs. Fedewa and Brake, was erroneous. Claimant alleged that that ALJ's analysis

failed to reconcile the contradiction between him finding Claimant more limited than Drs. Fedewa and Brake in his step three analysis yet still adopting a related portion of their opinion in his RFC determination at step four.  (DN 12, at PageID # 1396-97; DN 15, at PageID # 1424-26.)  Claimant noted that the ALJ found Claimant "had greater limitations in concentrating, persisting, or maintaining pace than opined by Dr. Fedewa and Dr. Brake" but "the ALJ still adopted Dr. Fedewa's and Dr. Brake's opinion that [Claimant] could concentrate and remain on task for two-hour periods."  (DN 12, at PageID # 1396.)

Claimant's argument invokes the distinction between steps two, three, and four of the sequential evaluation process.  When evaluating a claimant's mental impairments at steps two and three of the sequential evaluation process, the regulations require an ALJ to follow a special technique known as the psychiatric review technique ("PRT").  20 C.F.R. §§ 404.1520a, 416.920a (2025).  Specifically, after evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: an individual's ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage oneself.  *Id.* at §§ 404.1520a(b)-(c), 416.920a(b)-(c).  These four areas are commonly referred to as the "paragraph B" criteria as they parallel the criteria of paragraph B of the adult mental disorders listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b) (effective Oct. 6, 2023, to Feb. 17, 2025).  But the PRT is distinct and different from the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an

7

> RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996).  The listings provide examples of the functions associated with each of the paragraph B criteria.  For example, as to the paragraph B criteria regarding concentrating, persisting, or maintaining pace, the listings explain:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3).  By contrast, an ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2025).  It must address "the remaining exertional and nonexertional capacities of the" claimant—with exertional capacity referring to limitations related to physical strength and nonexertional capacity referring to non-strength-related physical and mental limitations—as well as a claimant's "ability to tolerate various environmental factors." SSR 96-8p, 61 Fed. Reg. at 34477.

Here, at the initial level, state agency psychological consultant Dr. Fedewa reviewed the medical evidence, applied the PRT, and found that Claimant had mild limitations in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.  (R. at 66, 76.)  She found Claimant had a moderate limitation in

8

the area of adapting or managing oneself.  (*Id.*)  Then, at step four, in opining as to Claimant's

mental RFC,  Dr. Fedewa concluded that:

> Despite mental limitations, the Claimant remains able to:
> A.    Understand, recall and carry out simple and some detailed instructions;
> B.    Concentrate and sustain attention for two hour segments for simple and some detailed tasks;
> C.    Relate adequately to others.
> D.    Adapt adequately to situational conditions and changes with reasonable support and structure within the above parameters.

(*Id.* at 71, 81.)  On reconsideration, state agency psychological consultant Dr. Brake affirmed Dr.

Fedewa's PRT and RFC assessments.  (*Id.* at 86, 90, 96, 100.)

In his step three findings, the ALJ found Drs. Fedewa and Brake's opinion "only partially

consistent with the following evidence," finding Claimant "more restricted" than Drs. Fedewa and

Brake opined.  (*Id.* at 22.)  He assessed a moderate limitation in each of the paragraph B criteria

and summarized in his decision the evidence he believed supported that determination as to each

criterion.  (*Id.* at 22-23.)  As to Claimant's ability to concentrate, persist, and maintain pace, the

ALJ noted that Claimant could "concentrate sufficiently to care for her four children, including an

eighteen-month old child" and that she was "primary caregiver for her children."  (*Id.* at 23.)  He

emphasized that Claimant could take her children to the park, dress them, feed them, get them

ready for school, shop in stores, shop by phone, and manage her finances including "pay[ing] bills,

count[ing] change, handl[ing] a saving's account, [and] us[ing] a checkbook/money orders."  (*Id.*)

He noted that Claimant typically didn't report difficulty with concentration and attention to her

providers except immediately after a seizure.  (*Id.* at 23 (citing *id.* at 789-808, 815-918).)  He also

summarized that CE Dial documented "normal attention, concentration, and thought process, and

assessed only a slight limitation in the [C]laimant's ability to sustain attention and concentration

to simple, repetitive tasks."  (*Id.* at 23 (citing *id.* at 809-14).)  He then stated in his step three

findings that Claimant was "able to concentrate and remain on task for simple tasks for two-hour periods across an eight-hour workday and five-day workweek without interruptions from psychologically based symptoms," the same limitation he would go on to impose in his RFC finding. (*Id.* at 23.) The ALJ also included language at the end of his step three findings clarifying that while his paragraph B analysis was not a RFC assessment, his later RFC finding "reflect[ed] the degree of limitation" he found in his paragraph B analysis. (*Id.* at 24.) In his RFC assessment, he summarized the opinion evidence of record. (*Id.* at 26-30.) As to the opinion of Drs. Fedewa and Brake, he criticized their opinion for using "language that [wa]s non-specific, d[id] not describe function, and d[id] not usefully convey the extent of capacity limitation." (*Id.* at 29.) He clarified that he framed their opinion "in vocational[ly] relevant terminology that is consistent with the medical evidence of record and is not inconsistent with the general findings of the psychological consultant." (*Id.*) As to their opinion regarding Claimant's ability to concentrate and sustain attention in two-hour segments for simple and some detailed tasks, he found the opinion "probative" but criticized their use of the word "some." (*Id.*) He repeated his opinion that Claimant could "concentrate and remain on task for two-hour periods across an eight-hour workday and five-day workweek on these simple tasks without interruptions from psychological[ly] based symptoms." (*Id.* at 30.)

Claimant contended it was inconsistent for the ALJ to conclude greater limitations were warranted in the paragraph B criteria but to still adopt Drs. Fedewa and Brake's RFC finding. (DN 12, at PageID # 1396-97; DN 15, at PageID # 1424-26.) The Court finds this argument unavailing for two reasons. First, Claimant presented no authority requiring an ALJ who finds an opinion

10

persuasive to adopt it verbatim.[4]  In fact, the opposite is true: "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive." *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) (citing *Reeves v. Comm'r of Soc. Soc.*, 618 F. App'x 267, 275 (6th Cir. 2015), and *Green v. Comm'r of Soc. Sec.*, No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020)).  Thus it is not automatically error for the ALJ to adopt some but not all of an opinion.  Second, Claimant cited no authority automatically linking a moderate limitation in the paragraph B criteria with any particular type of non-exertional limitation in the RFC, nor is the Court aware of any such authority.  Courts have in fact held that "not every mild or moderate limitation signifies a compromised work ability." *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021).  Here, the ALJ cited to substantial evidence supporting both his moderate limitation in the relevant paragraph B criterion and his corresponding RFC determination, and Claimant's brief did not provide a competing narrative calling into question the facts and records on which the ALJ relied.  She provided no citations to records demonstrating that she is more restricted than opined by the ALJ and without the same, the Court finds no error in the ALJ's analysis.  Claimant argued in her reply brief that "the entirety of [Claimant]'s argument argue[d] against the assumption that [Claimant] could remain on task for two-hour periods."  (DN 15, at PageID # 1427.)  But Claimant's brief does not substantiate that claim with competing medical evidence to call into question the ALJ's analysis, and it is her burden to do so at the RFC

---

[4] Claimant cited in her brief to *Ashley M. o/b/o J.J. v Commissioner of Social Security Administration* in support of her argument that there was an inconsistency in the ALJ's treatment of Drs. Fedewa and Brake's opinion. *Ashley M. o/b/o J.J. v. Comm'r of Soc. Sec. Admin.*, No. 3:24-CV-242, 2025 WL 2172652, at *4-5 (S.D. Ohio July 31, 2025), *report and recommendation adopted*, No. 3:24-CV-242, 2025 WL 2377995, at *1 (S.D. Ohio Aug. 15, 2025).  But that case is factually distinguishable.  In addressing claimant's argument that the ALJ's supportability analysis was flawed, the Court noted that the state agency psychological consultants had adopted their findings from a prior decision pursuant to Social Security Acquiescence Ruling 98-4(6) because "they found 'no change in [claimant's] condition since the prior decision' " whereas the ALJ had found that claimant "produced new and material evidence documenting a significant change in [his] condition due to a change in diagnoses." *Id.* at *5.  The *Ashley M.* court found those two positions inconsistent.  But the position taken by the ALJ herein is not so directly contradictory and does not involve a similar legal issue.

stage. *See, e.g.*, *Her*, 203 F.3d at 391; *Jordan*, 548 F.3d at 423. The ALJ's analysis provided substantial evidence to support both his paragraph B and RFC findings, and the two are not inconsistent. The Court thus finds the ALJ's RFC and his analysis of the opinions of Dr. Fedewa and Dr. Brake supported by substantial evidence.

#### b)       CE Dial

Claimant also argued that the ALJ failed to properly address a consultative examiner's finding that she had a "moderate to marked" limitation in her ability to tolerate stress and pressure in a day-to-day work setting. (DN 12, at PageID # 1397.) CE Dial examined the Claimant on August 16, 2023, and opined that Claimant had a "moderate to marked" limitation on her ability "[t]o tolerate the stress and pressure of day-to-day employment." (R. at 811.) CE Dial defined a moderate limitation as one where "the claimant is generally able to function satisfactorily" and a marked limitation as a "serious limitation" where "the ability to function is severely limited[] but not precluded." (*Id.*) In his decision, the ALJ referenced CE Dial's opined limitation as a "moderate" limitation, omitting that "moderate to marked" language. (*Id.* at 23, 27.) Claimant argued that this omission "warranted [remand] for further explanation to reconcile these facts (and to determine if the greater limitation warranted further RFC restrictions)." (DN 12, at PageID # 1397.)

The Court finds no error in the ALJ's discussion of CE Dial's opinion for several reasons. First, as noted above, even an ALJ who finds an opinion persuasive is not required to adopt it verbatim. *See Bryson*, 2022 WL 945318, at *4; *Reeves*, 618 F. App'x at 275 ("Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."). Even if the ALJ had expressly acknowledged and rejected the range of limitation opined by CE

Dial, it would not have been automatically error for him to partially adopt her opinion as he did. Second, the phrase "moderate to marked" reflects a range of limitation rather than a definitive finding of marked or greater impairment. Thus, because CE Dial's opinion was that Claimant was something less than fully precluded in her ability to tolerate the stress and pressure of day-to-day employment, the real inquiry in this case is not whether the ALJ repeated the precise phrasing of CE Dial's opinion, it is whether the ALJ's RFC finding Claimant less than fully precluded was supported by substantial evidence and reflected the degree of functional limitation supported by the record. The Court finds it did.

The ALJ's RFC limited Claimant to unskilled work with only occasional interactions with supervisors, coworkers, and the general public but no direct contact with the general public; the ALJ also found that Claimant should be paid hourly and not for piece work. (R. at 24.) He directly linked these limitations to Claimant's complaints of difficulties with stress. (*Id.* at 27.) In his RFC analysis, he noted her testimony that she has "bad" social anxiety and "does not react well to stress or to changes in her routine" as well as that her anxiety was getting worse. (*Id.* at 25.) He documented her complaints of anxiety to her providers for which her providers prescribed a couple different medications. (*Id.* at 26-27 (citing *id.* at 796, 858).) He emphasized that Claimant reported her anxiety symptoms resolved on Lexapro. (*Id.* at 27.) He noted that Claimant was mildly anxious during the June 2023 physical consultative examination. (*Id.* at 26.) He noted that Claimant was assessed by CE Dial to have a social anxiety disorder, and Claimant "endorsed anxiety when in public and when going to the grocery store." (*Id.* at 27.) However, he again emphasized that "[C]laimant's anxiety was much improved with medication." (*Id.*) Elsewhere in his RFC analysis he also stated that "[C]laimant's complaints of severe anxiety are inconsistent with her report of complete resolution of her symptoms with medication and with evidence of

13

normal mood and effect" during CE Dial's examination.  (*Id.* at 28.)  These items constitute substantial evidence to support his RFC determination.  As above, despite it being her burden to demonstrate that the ALJ's RFC was not supported by substantial evidence, Claimant offered no summary of medical evidence sufficient to call into question the ALJ's conclusions or to suggest he inappropriately characterized or selectively cited the record.  She produced no evidence suggesting that greater limitations than imposed by the ALJ were necessary to accommodate her anxiety and other limitations outside of CE Dial's opinion.  The ALJ found CE Dial's opinion "largely persuasive because it is supported by [CE] Dial's mostly normal examination findings, and it is consistent with evidence that the [C]laimant's anxiety was much improved with medication."  (*Id.* at 27.)  This statement combined with the evidence cited above constitutes substantial evidence to reject a greater limitation than opined by the ALJ, including a "marked" one regardless of whether the ALJ stated that CE Dial used that language or not.  Accordingly, the Court finds Claimant's argument regarding the ALJ's analysis of CE Dial's opinion without merit.

### 2.      Subjective Allegations

Claimant also challenged the ALJ's analysis of her subjective symptoms as unsupported by substantial evidence.  (DN 12, at PageID # 1397-1400; DN 15, at PageID # 1427-28.)  She criticized the ALJ for rejecting her testimony regarding the nature of her seizures, "including the recovery period and post-seizure confusion symptoms."  (DN 15, at PageID # 1427.)  20 C.F.R. §§ 404.1529, 416.929 provide that when forming an RFC, an ALJ must assess the claimant's subjective allegations regarding his or her symptoms.  20 C.F.R. §§ 404.1529(a), 416.929(a) (2025); SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016); SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017) (revising SSR 16-3p as initially published to its current operative form).  A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish

14

that he or she is disabled; there must be objective medical evidence that shows the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ should consider a number of factors including a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929). The regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . ."). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. at 49467.

Here, the ALJ found that "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 25.) However, the ALJ also found that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record

for the reasons explained in []his decision." (*Id.*)  Specifically, the ALJ cited that Claimant reported only one breakthrough seizure a month at her last neurological exam; that there was "no medical documentation of postictal confusing lasting two days"; in at least two instances Claimant had a normal mental status in close proximity to a seizure including after EEG testing in March 2023 and during the August 2023 consultative examination; "[C]laimant's physical examinations are consistently normal[;] she is consistently observed as awake, alert, oriented to self, time, place and person"; Claimant reported her anxiety as resolved with medication; she smokes marijuana daily; she quit smoking a few weeks ago and drinking three to four months ago; and Claimant's daily activities involve her being the primary caretaker for four minor children including her eighteen month old. (*Id.* at 28.)  These are appropriate reasons to discount Claimant's reports under 20 C.F.R. §§ 404.1529, 416.929, which require the ALJ to consider the frequency of a Claimant's symptoms, the effectiveness of any treatment, a Claimant's daily activities, and any precipitating or aggravating factors.

Claimant argued that the ALJ engaged in "[t]oo much layperson speculation regarding the meaning of MRI, EEG, and memory testing." (DN 12, at PageID # 1399; *see also id.* ("[T]he ALJ engaged in inappropriate speculation regarding the meaning of clinical evidence.").)  The Court considers this to be a variation on the argument often made by Claimants that an ALJ has inappropriately interpreted "raw medical data."  But "[t]reatment notes or reports from medical professionals following various testing, on the other hand, are not considered raw medical data beyond the ALJ's expertise." *Lonnie F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-890, 2024 WL 3506946, at *3 (S.D. Ohio July 23, 2024) (collecting cases); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("[T]he ALJ did not interpret raw medical data beyond her ability. The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already

16

been read and interpreted by a radiologist. The ALJ's conclusions regarding Rudd's lumbar spine and hands were consistent with the technician's interpretation of the x-rays.").  Here, the two examples cited by Claimant do relate to treatment notes, specifically the physical examination notes of CE Dial and a discharge report after Claimant underwent EEG testing both of which the ALJ cited to dispute Claimant's reports that she experiences confusion for a day or two after she has a seizure.  (R. at 28, 432-34, 809-10.)  As to the discharge report, the ALJ noted that "[C]laimant exhibited a normal mental status after an observed seizure during a video EEG in March 2023." (*Id.* at 28.)  As to CE Dial's findings, the ALJ noted that Claimant "exhibited full orientation, normal attention and concentration, fair judgment, and intact immediate and remote memory on 08/16/2023, despite reportedly experiencing a seizure that morning." (*Id.*)  The Court finds that neither of these citations by the ALJ constituted inappropriate lay speculation or are in any way similar to an ALJ attempting to review an MRI or x-ray that has not been read by a radiologist.  Instead, these comments by the ALJ are appropriately within the scope of his duty to evaluate the medical evidence as required by the applicable regulations.  *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

Claimant also argued that the ALJ inappropriately discounted the third-party function report submitted by her mother.  (DN 12, at PageID # 1400.)  But the ALJ acknowledged the report and explained that it was "probative, but not entirely persuasive" given the other evidence in the record.  (R. at 28.)  The ALJ also acknowledged that Claimant's mother "does see the claimant daily and is in the good position to provide this type of anecdotal testimony relating to the claimant's ability to function." (*Id.* at 29.)  Nevertheless, the ALJ found that Claimant's wide

range of activities showed she "can perform a range of simple work tasks and activities." (*Id.*) Notably, the ALJ was not required to provide the same detailed articulation for nonmedical source statements as for medical opinions. *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (2025). The regulations require the ALJ to consider such evidence but do not mandate exhaustive discussion. The Claimant argued the ALJ's analysis did not "align with the expectations of 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p." (DN 12, at PageID # 1400.) But the ALJ's decision indicated he considered Claimant's mother's report, and his analysis above was sufficient to support his rejection of Claimant's mother's allegations regarding how limited Claimant was based on her daily activities, one of the relevant regulatory factors. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Claimant has cited no authority requiring greater analysis by the ALJ.

Ultimately, though Claimant's argument cited to a few individual pieces of evidence the ALJ addressed, much as with her arguments above, Claimant did not provide any summation of medical or other evidence sufficient to call into question the ALJ's analysis or to merit further review by this Court. The ALJ's decision demonstrates that he followed the applicable regulations for considering Claimant's subjective symptoms and supported his conclusion that Claimant's statements about her symptoms were inconsistent with the record by citation to substantial evidence rooted in the regulatory factors prescribed for his analysis. Thus, the Court finds Claimant has failed to demonstrate any error.

### 3.    RFC Generally

Based on the conclusions above, the Court finds that the ALJ's RFC determination was supported by substantial evidence. His analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting in part *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard,

18

a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (internal citation omitted)).  As noted above, Claimant provided little to no specific discussion of individual medical records to support her arguments.  However, having found that the ALJ's decision was supported by substantial evidence, this Court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012).

**III.    ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:      Counsel of Record

March 25, 2026

19